24-1639-cv(L)
*County of Westchester v. Express Scripts*

# United States Court of Appeals for the Second Circuit

August Term 2024
Argued: April 4, 2025
Decided: September 2, 2026
No. 24-1639-cv(L)*

COUNTY OF WESTCHESTER, TIOGA COUNTY, CATTARAUGUS COUNTY, NY, PUTNAM COUNTY, NY, RENSSELAER COUNTY, NY, TOWN OF CHEEKTOWAGA, NY, FRANKLIN COUNTY, NY, CITY OF KINGSTON, SCHUYLER COUNTY, NY, NIAGARA COUNTY, NY, CAYUGA COUNTY, NY, TOWN OF AMHERST, NY, STEUBEN COUNTY, NY, CHAUTAUQUA COUNTY, NY, SARATOGA COUNTY, NY, CHEMUNG COUNTY, NY, ESSEX COUNTY, NY, CORTLAND COUNTY, NY, CITY OF MOUNT VERNON, NY, ORLEANS COUNTY, NY, OTSEGO COUNTY, NY, CLINTON COUNTY, NY, CHENANGO COUNTY, NY, TOMPKINS COUNTY, NY, CITY OF ITHACA, NY, GENESEE COUNTY, NY, HAMILTON COUNTY, NY, TOWN OF LANCASTER, NY, TOWN

---

* This Court consolidated the appeals for 24-1639, 24-1645, 24-1651, 24-1656, 24-1665, 24-1668, 24-1671, 24-1676, 24-1686, 24-1687, 24-1689, 24-1691, 24-1693, 24-1694, 24-1717, 24-1719, 24-1724, 24-1728, 24-1731, 24-1734, 24-1744, 24-1745, 24-1748, 24-1753, 24-1754, 24-1756, 24-1758, 24-1759, 24-1763, 24-1767, 24-1764, 24-1761, 24-1762, 24-1765, 24-1825, 24-1826, 24-1828, 24-1829, 24-1831, 24-1832, 24-1833, 24-1834, 24-1836, 24-1837, 24-1838, 24-1840, 24-1839, 24-1815, 24-1818, 24-1819, 24-1820, 24-1821, 24-1822, 24-1823, 24-1824, and 24-2020.

OF TONAWANDA, NY, LIVINGSTON COUNTY, NY, WARREN COUNTY, NY, YATES COUNTY, NY, MADISON COUNTY, NY, SCHOHARIE COUNTY, NY, NASSAU COUNTY, NY, COUNTY OF MONROE, COUNTY OF LEWIS, COUNTY OF BROOME, COUNTY OF ERIE, COUNTY OF MONTGOMERY, COUNTY OF COLUMBIA, COUNTY OF FULTON, CITY OF NEW YORK, COUNTY OF GREENE, COUNTY OF DUTCHESS, COUNTY OF ONTARIO, COUNTY OF ULSTER, COUNTY OF OSWEGO, COUNTY OF WASHINGTON, COUNTY OF HERKIMER, COUNTY OF SCHENECTADY, COUNTY OF SULLIVAN, COUNTY OF ORANGE, COUNTY OF ST. LAWRENCE, COUNTY OF SENECA, COUNTY OF WYOMING,

*Plaintiffs-Appellees*,

*v.*

EXPRESS SCRIPTS, INC., OPTUMRX INC.,

*Defendants-Appellants*,

MYLAN PHARMACEUTICALS, INC., PURDUE PHARMA L.P.,

*Defendants*.

---

Appeals from the United States District Court
for the Southern District of New York,
No. 23-cv-6096, Cathy Seibel, *Judge*,
No. 23-cv-2962, Cathy Seibel, *Judge*,
*and*

the United States District Court
for the Eastern District of New York,
No. 23-cv-5382, Orelia Merchant, *Judge*,
No. 23-cv-3498, Orelia Merchant, *Judge*.

Before: LEVAL, BIANCO, and NARDINI, *Circuit Judges*.

Plaintiffs-Appellees are counties and municipalities across New York that sued Defendants-Appellants Express Scripts, Inc. and OptumRx, Inc., two pharmacy benefit managers ("PBMs"), in dozens of state court lawsuits in New York, asserting state law claims based on allegations that Defendants bear responsibility for the local impact on their communities from the nationwide opioid epidemic.

Defendants removed these suits to the United States District Court for the Eastern District of New York (Orelia Merchant, *Judge*) and the Southern District of New York (Cathy Seibel, *Judge*), under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), based on their contention that the alleged conduct was done at least in part pursuant to their work as PBMs on behalf of agencies or entities that are part of the federal government, and their intention to rely on federal defenses. Plaintiffs thereafter sought to disclaim the federal aspects of Defendants' conduct via amended complaints, and the district courts remanded the cases back to state court in light of those disclaimers.

We conclude that the disclaimers here are ineffective in preventing removal because the claims target indivisible conduct allegedly performed by Defendants on behalf of their federal and non-federal clients and implicate similarly indivisible harms. Moreover, Defendants have satisfied the elements of the federal officer removal statute, as set forth in the Supreme Court's recent

decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026). In particular, Defendants (1) acted under the direction of federal officers in connection with their involvement as PBMs with the federal government, (2) are being sued, in part, for alleged acts they performed in relation to their federal clients, and (3) have asserted colorable federal defenses. Therefore, removal was proper, and the district courts erred in granting the remand motions.

To be clear, our holding does not address whether these PBMs, alleged to have contributed to the opioid crisis in New York alongside other actors in the supply chain, are ultimately liable for such conduct under New York law. Instead, we narrowly hold that these claims, once removed to federal court, could not lawfully be remanded to state court.

Accordingly, we **REVERSE** the decisions of the district courts and **REMAND** for further proceedings consistent with this opinion.

CHRISTOPHER G. MICHEL (Ellison Ward Merkel, Haley Plourde-Cole, Michael Lyle, Jonathan G. Cooper, and Charles B. Straut II, *on the brief*), Quinn Emanuel Urquhart & Sullivan LLP, Washington, District of Columbia, New York, New York, and San Francisco, California *for* Defendant-Appellant Express Scripts, Inc.

Debolina Das, Brian D. Boone, and Michael R. Hoernlein, Alston & Bird LLP, New York, New York and Charlotte, North Carolina, *for* Defendant-Appellant OptumRx, Inc.

ANDREA BIERSTEIN (Jayne Conroy and Thomas I. Sheridan, III, *on the brief*), Simmons Hanly Conroy, LLP, New York, New York, *for* Plaintiffs-Appellees County of Monroe, County of Lewis, County of Broome, County of Erie, County of Montgomery, County of Columbia, County of Fulton, City of New York, County of Greene, County of Dutchess, County of Ontario, County of Ulster, County of Oswego, County of Washington, County of Herkimer, County of Schenectady, County of Sullivan, County of Orange, County of St. Lawrence, County of Seneca, County of Wyoming, and County of Suffolk.

Paul J. Napoli, Hunter J. Shkolnik, Nestor Galarza, Salvatore C. Badala, Napoli Shkolnik PLLC, Santurce, Puerto Rico and Melville, New York, *for* Plaintiffs-Appellees County of Westchester, Tioga County, Cattaraugus County, NY, Putnam County, NY, Rensselaer County, NY, Town of Cheektowaga, NY, Franklin County, NY, City of Kingston, Schuyler County, NY, Niagara County, NY, Cayuga County, NY, Town of Amherst, NY, Steuben County, NY, Chautauqua County, NY, Saratoga County, NY, Chemung County, NY, Essex County, NY, Cortland County, NY, City of Mount Vernon, NY, Orleans

County, NY, Otsego County, NY, Clinton County, NY, Chenango County, NY, Tompkins County, NY, City of Ithaca, NY, Genesee County, NY, Hamilton County, NY, Town of Lancaster, NY, Town of Tonawanda, NY, Livingston County, NY, Warren County, NY, Yates County, NY, Madison County, NY, Schoharie County, NY, and Nassau County, NY.

---

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiffs-Appellees are counties and municipalities across New York that sued Defendants-Appellants Express Scripts, Inc. ("Express Scripts") and OptumRx, Inc. ("OptumRx"), two pharmacy benefit managers ("PBMs"), in dozens of state court lawsuits in New York, asserting state law claims based on allegations that Defendants bear responsibility for the local impact on their communities from the nationwide opioid epidemic.

Defendants removed these suits to the United States District Court for the Eastern District of New York (Orelia Merchant, *Judge*) and the Southern District of New York (Cathy Seibel, *Judge*), under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), based on their contention that the alleged conduct was done at least in part pursuant to their work as PBMs on behalf of agencies or entities that are part of the federal government, and their intention to rely on federal defenses. Plaintiffs thereafter sought to disclaim the federal aspects of Defendants' conduct via amended complaints, and the district courts remanded the cases back to state court in light of those disclaimers.

Though an issue of first impression before this Court in these consolidated appeals, several sister circuits have found similar disclaimers in connection with lawsuits against PBMs to be ineffective. *See Griffin v. Optum, Inc.*, 175 F.4th 897 (8th Cir. 2026); *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999 (6th Cir. 2026); *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188 (4th Cir. 2025); *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024). In addition, the Ninth Circuit has come out in both directions based on the varying circumstances presented in each case—for remand in *California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) (mem.), and against remand in *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069 (9th Cir. 2025).

We conclude that the disclaimers here are ineffective in preventing removal because the claims target indivisible conduct allegedly performed by Defendants on behalf of their federal and non-federal clients and implicate similarly indivisible harms. Moreover, Defendants have satisfied the elements of the federal officer removal statute, as set forth in the Supreme Court's recent decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026). In particular, Defendants (1) acted under the direction of federal officers in connection with their involvement as PBMs with the federal government, (2) are being sued, in part, for alleged acts they performed in relation to their federal clients, and (3) have asserted colorable federal defenses. Therefore, removal was proper, and the district courts erred in granting the remand motions.

To be clear, our holding does not address whether these PBMs, alleged to have contributed to the opioid crisis in New York alongside other actors in the supply chain, are ultimately liable for such conduct under New York law. Instead, we narrowly hold that these claims, once removed to federal court, could not

lawfully be remanded to state court.

Accordingly, we conclude that removal was proper, and we **REVERSE** the decisions of the district courts and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### I. Factual Background

As alleged in the operative complaints in each of the cases at issue here, Plaintiffs are counties and municipalities across New York that sued, *inter alia*, Defendants Express Scripts and OptumRx in state court for their alleged role in propagating the opioid crisis. Defendants are PBMs, which are "a little-known but important part of the process by which many Americans get their prescription drugs." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83 (2020). In particular, PBMs "serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use" by contracting with health insurance plan sponsors to administer prescription drug benefits and process insurance claims for prescription medications. *Id.* at 83–84.

PBMs help payors in "designing, managing and publicly identifying the extent of the coverage and benefits they provide to their members" by creating lists of prescription drugs that a given payor covers, known as formularies. App'x at 1579.[1] Formularies are often comprised of various tiers used to designate how much consumers owe as co-payment for a

---

[1] For convenience, we quote to the language from the amended complaint and incorporated state court short-form complaint in *Westchester County v. Mylan Pharmaceuticals, Inc.*, No. 23-cv-6096 (S.D.N.Y.), which is illustrative of the substantially similar allegations contained in each of the complaints at issue here.

prescription (*e.g.*, a $5 copayment for tier-1 drugs, a $10 copayment for tier-2 drugs). *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventus U.S. LLP*, 806 F.3d 71, 79–80 (2d Cir. 2015); *see also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 655 n.29 (2d Cir. 2015). "Because formulary coverage affects how much a patient pays for a drug, formularies can be used to steer patients toward certain drugs over others." App'x at 1579.

Plaintiffs allege that Defendants engaged in such steering with respect to opioids as "the gatekeepers to the vast majority of opioid prescriptions filled in the United States."[2] *Id.* at 1153. According to Plaintiffs, opioid manufacturers wanted to ensure their drugs got preferential placement on Defendants' formularies to drive up utilization rates. To get this placement, opioid manufacturers and Defendants negotiated for lucrative rebates and other fees, even long after they were "on notice that opioid abuse and misuse were rampant throughout the country and [each of the Plaintiffs'] geographical area." *Id.* at 1567. Defendants also successfully resisted efforts to require preauthorization for opioid prescriptions, facilitating "unfettered access" to opioids. *Id.* at 1570.

These incentives and unfettered access, in turn, led to an "oversupply of prescription opioids" in Plaintiffs' communities that "injuriously affected rights common to the general public." *Id.* at 1255, 2529. Among other harms, Plaintiffs allege that the oversupply caused the local governments to incur "excessive costs to treat the opioid epidemic . . . including, but not limited to, increased costs of police, emergency, health, prosecution,

---

[2] Plaintiffs allege that Defendants "manage the drug benefits for approximately ninety-five percent (95%) of the United States' population or 253 million American lives." App'x at 1153.

corrections, rehabilitation, and other services." *Id.* at 2540.

## II. Procedural History[3]

Plaintiffs first filed these cases in state courts across New York between September 2017 and February 2020. Given the high volume of opioid-related suits, the New York State Litigation Coordinating Panel consolidated these cases with others into *In re Opioid Litigation*, Index No. 400000/2017. After a subset of cases, designated "Track I Cases," proceeded to trial with a verdict against certain defendants, these cases and the remaining others were transferred to Westchester County Supreme Court. *See In re Opioid Litig. – Non-Track I Cases*, Index No. 75000/2022. In 2023, Express Scripts and OptumRx were added as Defendants, with allegations against them focused on their negotiations for, and inclusion of, opioids on their formularies in exchange for rebates and other incentives. Based on these allegations and other related alleged conduct, Plaintiffs brought seven state law claims: (1) deceptive acts and practices under New York General Business Law ("NY GBL") § 349; (2) false advertising under NY GBL § 350; (3) public nuisance; (4) violation of New York Social Services Law § 145-B; (5) fraud; (6) unjust enrichment; and (7) negligence.

Defendants[4] removed these cases to federal court (34 to the Southern District of New York and 1 to the Eastern District of New York), pursuant to the federal officer removal statute, 28

[3] The complex procedural history of these cases is typical of the myriad of opioid cases filed in state courts across the country. *See* Zachary Clopton & D. Theodore Rave, *Opioid Cases and State MDLs*, 70 DEPAUL L. REV. 245, 249–58 (2021). There is also an ongoing federal multidistrict ligation regarding substantially similar claims. *See In re Nat'l Prescription Opiate Litig.*, No. 17-MD-2804, 2023 WL 166006, at *1–3 (N.D. Ohio Jan. 12, 2023).

[4] The other 21 named defendants did not seek removal.

U.S.C. § 1442(a)(1). They contend that they acted pursuant to federal agency direction in providing and administering some pharmacy benefit services that implicated the alleged conduct in these cases, and intend to rely on federal defenses, thereby satisfying the requirements for the case to be heard in a federal forum. As asserted in their removal papers, Express Scripts serves as a PBM for the U.S. Department of Defense ("DoD") healthcare program for active-duty service members, known as TRICARE. Express Scripts also services health plans that participate in the Federal Employees Health Benefits Program ("FEHBP"), which is administered and overseen by the U.S. Office of Personnel Management ("OPM"). OptumRx contracts with the Veterans Health Administration ("VHA") to provide healthcare services to veterans.

Plaintiffs then amended their complaints to include new allegations that sought to disclaim and abandon any claims that could give rise to removal under Section 1442(a) (collectively, these allegations are henceforth referred to as "the disclaimers"). For example, as one paragraph states:

> This lawsuit does not seek damages related to the federal government or for conduct undertaken pursuant to contracts with the federal government, nor does it challenge the creation of custom formularies for, or on behalf of, a federal government agency or federal officer, such as for any Federal Employees Health Benefit Act ("FEHBA"), TRICARE-governed health benefits plan or any other federal plan.

App'x at 300.[5]

---

[5] The full disclaimer language can be found in paragraphs 2 through 6 of the Second Amended Complaint in *Westchester County v. Mylan Pharmaceuticals, Inc.*, No. 23-cv-6096 (S.D.N.Y.). *See* App'x at 1327–30.

In April 2024, Plaintiffs added Defendants to amended complaints in 22 additional cases with allegations, claims for relief, and disclaimers similar to those in the 35 earlier-removed cases. Defendants removed these cases to federal court as well, where they were either consolidated with the other cases in the Southern District of New York or assigned to the same district judge handling the cases removed to the Eastern District of New York.[6]

Plaintiffs moved to remand the cases to state court, arguing that, in light of the disclaimers, "[t]here is simply no nexus whatsoever between the work [Defendants] may do for the federal government and the claims asserted by Plaintiffs in these cases," eliminating subject matter jurisdiction, and that there is no basis for the district courts to exercise supplemental jurisdiction over the state law claims. *Id.* at 1658.

The district courts granted Plaintiffs' motions to remand based on the disclaimers. *See generally Westchester Cnty. v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214 (S.D.N.Y. 2024); *Westchester Cnty. v. Mylan Pharms., Inc.*, No. 23-cv-6096 (S.D.N.Y. July 3, 2024), Dkt. No. 152; *Westchester Cnty. v. Mylan Pharms., Inc.*, No. 24-cv-2962 (S.D.N.Y. July 3, 2024), Dkt. No. 14; *Nassau Cnty. v. Mylan Pharms., Inc.*, No. 23-cv-5382, 2024 WL 3298500 (E.D.N.Y. July 4, 2024); *County of Suffolk v. Purdue Pharma L.P.*, No. 24-cv-3498 (E.D.N.Y. July 27, 2024) (minute entry). Emblematic of the determinations

[6] The cases removed to the Southern District of New York were consolidated for pre-trial purposes with *Westchester County v. Mylan Pharmaceuticals, Inc., et al.*, No. 23-CV-6096 (S.D.N.Y.), which was designated as the lead case. As noted *supra*, this decision primarily cites the record of that case, and the parties do not dispute that the records are substantially similar in each of the other cases at issue here for purposes of the removal analysis.

relied upon in each of these decisions, the district court in *Westchester County* found that "the disclaimers offered by Plaintiffs are sufficiently specific" to excise federal aspects of the claims in that "they abandon any claims or recovery arising out of the Removing Defendants' work on behalf of any federal entity, including those identified in their respective notices of removal," 737 F. Supp. 3d at 225, and were similar to disclaimers found to be effective in removing federal jurisdiction by other district courts across the country, *id*. at 226–27. These appeals followed.

## DISCUSSION

We "review *de novo* [a] district court's determination that it lacked subject matter jurisdiction and its decision to remand." *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King Pharms., Inc.*, 906 F.3d 260, 264 (2d Cir. 2018). Despite the general rule that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), a remand order "is reviewable by appeal where, as here, the case was removed pursuant to [28 U.S.C. §] 1442, i.e., the federal-officer removal statute," *Connecticut ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 131 (2d Cir. 2023) (emphasis omitted) (internal quotation marks and citation omitted). Whether on appeal from a grant or a denial of a motion to remand, the "[d]efendant always has the burden of establishing that removal is proper." *United Food & Com. Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (alteration in original) (internal quotation marks and citation omitted).

Section 1442(a)(1) authorizes "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof" to remove

actions "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).[7] The Supreme Court has distilled the statute into three elements, permitting removal of cases to federal court by a defendant who (1) is a "person acting under a federal officer, such as certain private parties hired to assist federal officers," (2) is being sued for an act taken "for or relating to any act under color of such office," and (3) asserts "a colorable federal defense." *Plaquemines*, 146 S. Ct. at 1057–58 (internal quotation marks and citations omitted). "We construe the statute liberally and have interpreted each of these requirements broadly." *Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 120 (2d Cir. 2021); *see Agyin v. Razman*, 986 F.3d 168, 175 (2d. Cir. 2021) ("Courts generally apply a broad construction—particularly with respect to private parties who claim to be 'acting under' a federal officer.").

The federal officer removal statute "is an exception to the well-pleaded complaint rule" insofar as it "allows suits against federal officers [to] be removed *despite the nonfederal cast of the complaint*,

---

[7] Section 1442(a)(1) states in full:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

and reflects a congressional policy that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (alteration in original) (emphasis added) (internal quotation marks and citation omitted). This statute guards against a state court adjudication of a federal defense "paralyz[ing] the operations of the government." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). "Because a core purpose of the statute is to let the validity of the [federal] defense be tried in federal court, a defendant seeking removal need not virtually win his case, nor must his defense even be clearly sustainable on the facts." *Cuomo v. Crane Co.*, 771 F.3d 113, 115–16 (2d Cir. 2014) (alteration in original) (internal quotation marks and citations omitted). Moreover, "a court . . . must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin*, 986 F.3d at 175 (alteration adopted) (internal quotation marks and citation omitted). Thus, a "merely colorable defense is sufficient to assure the federal court that it has jurisdiction to adjudicate the case," and we need not "engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116 (internal quotation marks and citation omitted). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should have the opportunity to present [his] version of the facts to a federal, not a state, court." *Id.* (alteration in original) (internal quotation marks and citation omitted).

As set forth below, applying this standard, we hold that the disclaimers are ineffective to defeat removal and Defendants have satisfied the elements for removal.

## I. Disclaimers

Defendants argue that reversal of the remands to state court is warranted because Plaintiffs' disclaimers are "factually and legally ineffective" in eliminating the basis for federal-officer jurisdiction due to the indivisible nature of alleged conduct and harms, Defendants' Br. at 29 (capitalization omitted), meaning remand would "force the PBMs to prove federal direction in state court," *id.* at 37 (capitalization omitted). Indeed, according to Defendants, they removed the cases on the basis that Plaintiffs seek to hold them liable for actions they took on behalf of their TRICARE, FEHBP, and VHA clients, meaning actions they were "required to perform at the direction and supervision of the federal government." App'x at 1293. They maintain that the disclaimers could not possibly prevent federal-officer jurisdiction here because they conducted singular rebate negotiations with opioid manufacturers on behalf of all clients—these federal and non-federal plans alike—and entered into singular rebate contracts that govern both types of plans. Furthermore, Defendants assert that their federal and non-federal conduct would have contributed to the same, indivisible alleged "oversupply of opioids." Defendants' Br. at 44. We agree.

Plaintiffs counter by arguing that, in disclaiming all claims based on Defendants' conduct on behalf of federal programs and any resulting harms, the disclaimers are sufficiently "specific and comprehensive" to render Section 1442(a)(1) inapplicable. Plaintiffs' Br. at 9. The district courts, in adopting this argument and accepting the disclaimers, relied heavily on two out-of-circuit district court cases, both of which were subsequently overturned on appeal in thorough and well-reasoned opinions. *See California v. Eli Lilly & Co.*, No. 2:23-cv-01929 (SPG) (SK), 2023 WL 4269750, at *1 (C.D. Cal. June 28, 2023) ("*California I*"), *rev'd and remanded*

*sub nom. California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) ("*California II*") (mem.); *Gov't of Puerto Rico, v. Eli Lilly & Co.*, No. 23-cv-1127 (JAG), 2023 WL 4830569 (D.P.R. July 13, 2023) ("*Puerto Rico I*"), *rev'd and remanded sub nom. Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024) ("*Puerto Rico II*"). Two other circuit courts have recently joined this growing body of cases finding such disclaimers to be ineffective in the context of lawsuits against PBMs arising from the opioid epidemic. *See Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999 (6th Cir. 2026); *Griffin v. Optum, Inc.*, 175 F.4th 897 (8th Cir. 2026). As set forth below, we find the analyses contained in these decisions by our sister circuits to be persuasive.

The First Circuit's decision in *Puerto Rico II* is particularly instructive in explaining the types of disclaimers that can and cannot defeat federal officer removal jurisdiction. There, in a suit against PBMs for perpetrating a scheme to unlawfully inflate insulin prices through rebate negotiations and price setting, the First Circuit explained that "a valid disclaimer must eliminate *any* basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Puerto Rico II*, 119 F.4th at 187 (emphasis in original). Thus, disclaimers that "clearly carve[] out certain factual bases, whether *by time span or location*, such that any alleged injury could not have happened under the direction of a federal officer" will justify remand to the state court after removal. *Id.* (alteration in original) (emphasis added) (internal quotation marks and citation omitted). By contrast, a "disclaimer that requires a state court, to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Id.* at 188 (quoting *Willingham v. Morgan*, 395 U.S. 406, 409 (1969)). This is because

such disclaimers are "circular"—"if permitted, they would force federal contractors to prove in state court that they were acting under the direction of the government, undermining a defendant's right to have the validity of the [federal] defense . . . tried in a federal court." *Id.* at 187–88 (internal quotation marks and citations omitted).

The First Circuit then applied those observations to the disclaimer at issue. There, the plaintiff, much like here, attempted to evade federal officer removal by disclaiming "all relief relating to a federal program or contract." *Id.* at 179 (internal quotation marks omitted). The defendant PBM argued that its "services for [the federal] FEHBA were indivisible from its PBM services for private entities" because it "negotiates for rebates with manufacturers simultaneously for FEHBA and non-FEHBA plans; there are no 'FEHBA-only' negotiations." *Id.* at 189, 191 (likewise, in the *Puerto Rico II* case, as in ours, for the same reasons, there were no non-FEHBA negotiations). The court concluded that "the indivisibility of those services is an important facet of [the PBM's] theory of the case" that it must credit in evaluating removal. *Id.* at 189 (internal quotation marks and citation omitted). Crediting the plausible assertion of indivisibility, the court determined that, despite claiming to target only the non-federal negotiation, the plaintiff "necessarily targets what [the PBM] alleges are acts under a federal officer's authority," because there was a single negotiation on behalf of all payors. *Id.* at 191 (internal quotation marks and citation omitted). It further noted that "because these negotiations allegedly cannot be disassembled, crediting the disclaimer would foreclose [the PBM's] right to have a federal court evaluate its 'colorable' preemption defense under FEHBA's express preemption provision." *Id.* In short, the First Circuit concluded that "[b]ecause of this alleged indivisibility, the disclaimer did not

foreclose [the PBM's] arguments that it acted under a federal officer and possess[es] colorable federal defenses. In this way, the disclaimer did not eliminate the possibility that the Commonwealth would recover for [the PBM's] official acts. The disclaimer therefore did not justify remand." *Id.* at 194.

Similarly, in *California II* (a case factually analogous to *Puerto Rico II*), the Ninth Circuit summarily reversed the district court's remand order, concluding that because the disclaimer at issue there "fails to explicitly release claims or possible recovery from rebate practices as they relate to" the federal programs, the disclaimer "does not necessarily defeat removal, because the rebate negotiations remain causally connected to the dispute." 2024 WL 3770326, at *1 (emphasis omitted) (internal quotation marks and citation omitted). In an opinion concurring in the judgment, Judge Ikuta explained that a disclaimer in such a case cannot defeat federal officer removal because the PBM's "work for private clients cannot be disaggregated from its work for the federal government," and therefore "in targeting [the PBM's] rebate negotiations for private clients, California necessarily also targets [the PBM's] rebate negotiations for the federal government (since they are the same negotiations)." *Id.* at *2 (Ikuta, *J.*, concurring in the judgment).[8]

[8] It is important to note that, in a separate case involving similar disclaimers with similar allegations against Express Scripts, the Ninth Circuit held that the disclaimer was effective in preventing remand after removal. More specifically, it concluded that "Defendants d[id] not satisfy the causal nexus prong of the federal officer removal statute because none of the conduct charged in the amended complaint causally relates to actions Defendants took under the direction of a federal officer." *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069, 1075 (9th Cir. 2025). However, on the facts, *Harrison* differs from the other PBM cases discussed above (and this case) because the Ninth Circuit, in

Moreover, the Fourth Circuit, in a case involving PBMs' role in insulin pricing, *West Virginia ex rel. Hunt*, 140 F.4th at 197, and in a case involving Maryland's suit against foam manufacturers for contaminating waterways with PFAS, *Maryland v. 3M Co.*, 130 F.4th 380, 389 (4th Cir. 2025), also wholesale adopted *Puerto Rico II*'s reasoning.[9] Recently, the Eighth Circuit rejected an analogous disclaimer in a substantially similar lawsuit suit in which the State of Arkansas sued, *inter alia*, Express Scripts and OptumRx for their role as PBMs in contributing to the opioid crisis. *Griffin*, 175 F.4th at 901, 905. The Sixth Circuit also reached the same conclusion in a more general challenge to PBM prescription drug pricing, *Ascent Health Servs.*, 165 F.4th at 1006, as did the Eleventh Circuit in another 3M PFAS case, *Town of Pine Hill v. 3M Co.*, 183

---

reaching that determination, held that defendants had waived reliance on rebate negotiations conducted indivisibly for federal and non-federal clients, *id.* at 1087 n.9—a central and preserved part of Defendants' theory here. Moreover, on the law, as discussed *infra*, *Plaquemines* effectively overruled the "causal nexus" standard of the "relating to" element applied by the Ninth Circuit.

[9] The Fourth Circuit also distinguished *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024), a PFAS case where the Seventh Circuit affirmed a remand order by crediting the plaintiff's "clear[] and unequivocal[]" concession that it would not seek relief against 3M for mixed PFAS contamination arising from a federal location, *id.* at 849. As the Fourth Circuit aptly pointed out, the disclaimer in *Raoul* was geographical in nature—"100% of th[e] contamination must [have been] sourced from the single, geographically limited facility for the state to recover. As a result, no state factfinder would need to apportion the PFAS contamination between sources." *Maryland*, 130 F.4th at 392 (alterations in original) (internal quotation marks and citations omitted). In *Maryland*, however, like here, "a factfinder must, unlike in *Raoul*, still decide the important causation and allocation questions. And as stated, those are merits questions that belong in federal court." *Id.*

F.4th 1339, 1348 (11th Cir. 2026).

Here, Plaintiffs' disclaimers similarly fail to defeat federal officer removal jurisdiction because they fail to negate Defendants' indivisibility theory. Defendants plausibly claim that the challenged conduct, namely, the negotiation of rebates with opioid manufacturers, was a single negotiation across both the federal and non-federal programs. Defendants further claim that they did not have separate rebate agreements for the federal and non-federal programs. Under this theory of the case, which must be credited at this stage, Plaintiffs' targeting of the rebate negotiations necessarily implicates federal conduct, because it is the same conduct at issue for the federal and non-federal programs.

Likewise, the federal defenses that Defendants intend to assert would cover the whole of the alleged conduct, because any supposed non-federal conduct is inextricably intertwined with federal conduct. In other words, "[b]ased on the allegedly indivisible nature of [Defendants'] negotiations, [Plaintiffs'] alleged injury could . . . have happened under the direction of a federal officer, presenting a colorable federal defense." *Puerto Rico II*, 119 F.4th at 193 (omission in original) (internal quotation marks and citation omitted). To accept Plaintiffs' disclaimer would require us to ignore Defendants' theory of the case and effectively "foreclose [Defendants'] right to have a federal court evaluate its 'colorable'" federal defenses, such as federal contractor immunity, as well as preemption under TRICARE and FEHBA. *Id.* at 191. And it is "[p]recisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should have the opportunity to present [his] version of the facts to a federal, not a state, court." *Cuomo*, 771 F.3d at 116 (alteration in original) (internal quotation marks and citations omitted).

Moreover, the diffuse nature of Plaintiffs' public nuisance claims in the cases before us and the alleged community-wide harm underscores the ineffectiveness of the disclaimers.[10] Plaintiffs suggest that "PBMs' conduct on behalf of their federal customers is 'divisible' for trial by simply precluding any evidence or reference to the federal programs. Plaintiffs can prove their claims against PBMs without any discussion or evidence concerning their roles in federal health care." Plaintiffs' Br at 10. However, this approach would still require a state court to do the disentangling of Defendants' conduct. Nor do Plaintiffs eliminate the obligation to disaggregate the "[i]ncreased costs and expenses . . . relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems" and "significant expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services" that they seek to recover. App'x at 1278, 1287. Such difficult factual questions about causation should be decided by a federal, not state, court. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) ("[Q]uestions about whether the Companies' pollution that allegedly caused the Residents' injuries flowed from the Companies' specific wartime production for the federal government or from their more general manufacturing operations outside those confines" were "merits questions that a federal court should decide.") (emphasis omitted)[11]; *Maryland*,

---

[10] Under New York law, public nuisance is "a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons." *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001).

[11] Plaintiffs attempt to distinguish the cases at issue here from *Baker* because,

130 F.4th at 391 ("[D]eciding whether certain PFAS contamination came from 3M's Military AFFF or from its non-AFFF products presents a challenging causation question—one that 3M argues is impossible to bifurcate—that will ultimately fall to a factfinder. . . . The need to unravel such challenging questions in this case establishes that 3M's federal work is inextricably related to the charged conduct.").

In short, Plaintiffs' disclaimers fail to defeat federal officer removal jurisdiction because they suffer from the same circular logic plaguing the disclaimers our sister circuits found to be ineffective. Whether in state or federal court, Defendants will continue to press that the alleged conduct and resulting harms necessarily implicate their federal work and are subject to federal defenses. More fundamentally, in deciding whether to enforce the disclaimers, either court will have to ascertain whether the harms from opioids distributed via federal and non-federal programs can be disaggregated at all. Thus, these disclaimers, which yield thorny factual and legal issues, cannot defeat federal officer removal because they do not "eliminate *any* basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Puerto Rico II*, 119 F.4th at 187 (emphasis in original). Accordingly, the district courts erred in remanding the cases based on the disclaimers.

---

there, "the defendants' federal defense was colorable because the defendants could point to federally directed conduct—wartime production—that arguably caused the pollution." Plaintiffs' Br. at 19. Again, this argument ignores Defendants' theory of the case, which points to federally-directed conduct that arguably caused the alleged harms.

## II. Federal Officer Removal

Plaintiffs argue in the alternative that, even if the disclaimers are ineffective in defeating removal, Defendants still fail to satisfy the three elements necessary to maintain federal officer jurisdiction under Section 1442(a)(1). We disagree. The Supreme Court's recent decision in *Plaquemines* clarified the applicable test for federal officer removal.[12] *See supra* at 14. Under that test, removal is proper here.

### A. "Acting Under" Element

The "acting under" requirement is a "distinct" element of the federal officer removal statute, met where "certain private parties [are] hired to assist federal officers" in performing their duties. *Plaquemines*, 146 S. Ct. at 1057 (citing *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 148–53 (2007)). Supreme Court "precedent and [Section 1442's] statutory purpose make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphases omitted). Thus, in *Agyin*, for example, we held that the removing defendant doctor who was deemed a federal employee under the relevant statute was "acting under" a federal officer "because [1] he performed work that, absent the program in which he participated, the government would have had to perform itself; [2] his work assisted the mission of the federal agency that oversaw his work; and [3] he was subject to federal oversight and control." 986 F.3d at 178.

Here, Defendants performed work that, otherwise, the DoD, VHA, and OPM would have to perform on their own in fulfilling

---

[12] Consideration of this appeal was held in abeyance pending the Supreme Court's decision in *Plaquemines*, and the parties filed supplemental letters addressing the effect of the decision on this appeal.

their respective agency missions. Defendants' work plainly assists those agencies in fulfilling their obligations to provide medical care to their constituents, and they have also articulated how these agencies exercise oversight and control over their formulary work. For example, the TRICARE statute requires the DoD to "establish a[] . . . pharmacy benefits program," including "a uniform formulary" that encompasses "the complete range of therapeutic classes.'" 10 U.S.C. § 1074g(a)(1)–(2)(A). Express Scripts notes that, pursuant to that statutory directive, it has a TRICARE contract with DoD with a Statement of Work that "dictates nearly every aspect of Express Scripts' responsibilities," Defendants' Br. at 20 (citing App'x at 861–62, 1913–14, 2627–77), including requiring it to establish and maintain a nationwide pharmacy network, and to incorporate specific terms into its pharmacy contracts. All of this work is subject to the DoD's oversight, as Express Scripts is subject to weekly DoD briefings and a formal review program three times per year, and "daily interaction . . . regarding contract administration and execution." App'x at 864, 1916. The record shows the same relationship between Express Scripts and the OPM, and between OptumRx and the VHA.

Although Plaintiffs argue that these relationships are insufficient to satisfy the "acting under" element, those arguments are unpersuasive. First, Plaintiffs contend that their disclaimers sever "the conduct alleged to have been wrongful and any federal officer's close direction." Plaintiffs' Br. at 23 (internal quotation marks and citation omitted). However, that argument "impermissibly conflates the distinct 'acting under' and 'connected or associated with' elements of the federal officer removal test," leaving "the 'relating to' requirement with little, if any, independent function." *Plaquemines*, 146 S. Ct. at 1063 (internal quotation marks and citation omitted). Second, they

assert that Defendants did not "act under" the federal government in servicing non-federal plans, but that argument also misses the mark in light of our indivisibility analysis with respect to the ineffectiveness of the disclaimer.

Nor is our conclusion novel. The Fourth Circuit, in a case on all fours with this one—a local government sued Express Scripts for contributing to the opioid epidemic in Arlington County, Virginia—similarly held that Express Scripts was "acting under" a federal officer because "by operating the [TRICARE Mail Order Pharmacy ("TMOP")], [it was] carrying out the duties of DOD by operating the TMOP and [was], at all times, subject to the federal government's guidance and control. This is the type of unusually close relationship involving detailed regulation, monitoring, or supervision sufficient to satisfy the 'acting under' requirement." *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021) (alteration adopted) (internal quotation marks and citation omitted); *accord West Virginia ex rel. Hunt*, 140 F.4th at 198 ("OPM exerts some control over [the PBM], reserves the right to monitor and supervise the otherwise private party, all while [the PBM] helps carry out OPM's duties to administer health insurance under FEHBA.") (alterations adopted) (internal quotation marks and citation omitted). Other circuit courts have reached this same conclusion in PBM federal officer removal cases. *See, e.g.*, *Griffin*, 175 F.4th at 902 ("When the managers negotiate with drug manufacturers, they play a key role in the OPM's effort to carry out its duties under FEHBA to provide prescription drug benefits."); *Ascent Health Servs.*, 165 F.4th at 1005 ("When the PBMs negotiate with drug manufacturers, . . . they perform a task that the government itself would otherwise have to perform."); *Puerto Rico II*, 119 F.4th at 190 (holding that the PBM "assists OPM in carrying out its official task of administering federal health benefits," and "OPM dictates

several contractual provisions that [the PBM] must adhere to in entering these rebate agreements").

In sum, we conclude that the "acting under" element has been satisfied.

### B. "Relating To" Element

*Plaquemines* clarified that the "relating to" requirement "sweeps broadly," and it means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." 146 S. Ct. at 1060 (internal quotation marks and citation omitted). Relation can be established even if it is an "indirect" connection without a "strict causal relation," meaning "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Id.* (internal quotation marks and citation omitted). In other words, as long as the asserted connection is not "tenuous, remote, or peripheral," the "relating to" element is met. *Id.* at 1061 (internal quotation marks and citation omitted). In reaching this determination, the Supreme Court rejected the "causal connection" or "nexus" tests applied in some circuits, based on an earlier version of the same statute that required the removed suit be "for" an act under color of federal office, rather than "relating to."[13] *See id.* at 1060 n.3; *id.* at 1064 (Jackson, *J.*, concurring in the judgment) ("[I]n the majority's view, Congress's addition of 'or relating to' jettisoned the causal-nexus

---

13 In 2011, Congress enacted the Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, which amended the federal-officer removal statute to refer to defendants sued "for or relating to any act under color of [federal] office," where it had previously referred only to defendants sued "for any act under color of such office," 28 U.S.C. § 1442(a) (1996).

test in favor of a looser standard.").

Here, this element is met because, as discussed *supra*, Plaintiffs' allegations implicate Defendants' conduct carried out for their federal clients. Plaintiffs argue that "[t]here is no more connection between what the PBMs offer their non-federal clients and the services they provide to the federal government than there is between the cars an automobile manufacturer sells to the public and the tanks it may produce for the government." Plaintiffs' Supp. Ltr. Br. at 4. However, that argument is contradicted by the record. Defendants conduct negotiations for "[their] entire book of business" and "do[] not have separate rebate agreements with opioid manufacturers for [federal and non-federal plans]," meaning the allegations in the complaint necessarily relate to that conduct. App'x at 1968. Moreover, the fact that the Defendants' negotiations also relate to non-federal conduct does not undermine their relation to federal conduct. To the contrary, as the Supreme Court has emphasized, the broad language of Section 1442(a)(1) reflects that its core purpose is "[t]o protect the Federal Government from state-court interference with its operations," and applies when federal conduct is implicated, even if a plaintiff does not wish to challenge that conduct. *Plaquemines*, 146 S. Ct. at 1057 (internal quotation marks and citation omitted). Thus, there is a clear relation here that satisfies the second element of the federal officer removal statute.

Plaintiffs' other arguments regarding this element are clearly foreclosed by the Supreme Court's analysis in *Plaquemines*; namely, Plaintiffs assert that "PBMs can point to no federal requirement that they negotiate rebates or fees from manufacturers on an undifferentiated basis," and they were otherwise under no "federal mandate" in structuring their opioid-related agreements in formularies. Plaintiffs' Br. at 12, 23. However, *Plaquemines* confirmed that this element is satisfied by

the relationship between the Defendants' alleged conduct and their federal clients, even if that conduct was not "specifically required" by some federal mandate and did not "strictly cause[] the challenged conduct." 146 S. Ct. at 1060. Accordingly, we find Plaintiffs' arguments to the contrary unavailing.

### C. "Colorable Federal Defense" Element

With respect to the statute's federal defense element, we have explained that, "[g]iven that the removal statute more generally is not narrow or limited and that one of its purposes is to have such defenses litigated in the federal courts, the federal defense requirement is satisfied in all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138–39 (2d Cir. 2008) (internal quotation marks and citation omitted). Furthermore, we have emphasized that "[t]o be colorable, the defense need not be clearly sustainable, as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Id*. at 139 (internal quotation marks and citation omitted).

Here, Defendants have asserted several federal defenses, including: (1) a government contractor defense because they aided the government in performing basic government tasks; (2) a TRICARE preemption defense, which preempts claims related to the healthcare benefits for TRICARE members; and (3) a preemption defense under FEHBA, which expressly preempts state laws relating to coverage or benefits afforded by FEHBA plans. Plaintiffs raise no argument countering the colorable nature of these defenses other than to contend that they "have specifically disclaimed any claims premised upon conduct performed pursuant to a federal contract, including claims that would implicate a government contractor or preemption

defense," and thus, "PBMs have no plausible federal defense." Plaintiffs' Br. at 20 (internal quotation marks and citation omitted). However, because we have already determined that the Defendants' alleged federal conduct is indivisible from its non-federal conduct and that the waivers are ineffective, this argument similarly fails with respect to this element. *See Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 254–56 (finding the government contract defense and federal preemption to be colorable federal defenses); *accord In re Nat'l Prescription Opiate Litig.*, 2023 WL 166006, at *7–8.

* * *

In sum, Defendants have satisfied each of the elements for removal under Section 1442(a)(1).

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgments of the district courts and **REMAND** for further proceedings consistent with this opinion.